**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 9, 2016**

# In the Court of Appeals of Georgia

A16A0497. WILLIAMS v. THE STATE.                    DO-017 C

A16A0498. WILLIAMS v. THE STATE.                    DO-018 C

DOYLE, Chief Judge.

Stacey Donnell Williams was charged in Gwinnett County Superior Court with two unrelated counts of armed robbery.[1] After the charges were severed, Williams was convicted on Count 2, and he entered a negotiated guilty plea as to Count 1. In Case No. A16A0497, Williams appeals the trial court's denial of his motion for new trial as to Count 2, arguing that (a) his constitutional right to be present was violated when he was absent from a calendar call; (b) he was entitled to a discharge and acquittal because the State failed to comply with his speedy trial demand; and (c) trial counsel was ineffective by failing to move for discharge and acquittal and by failing

---

[1] OCGA § 16-8-41 (a).

to object to certain evidence going out with the jury. In Case No. A16A0498, Williams appeals the denial of his motion to withdraw his guilty plea as to Count 1, arguing that (a) the strength of the evidence did not negate his innocence; (b) trial counsel was ineffective by recommending that he accept the plea and by failing to move for discharge and acquittal; and (c) he was entitled to discharge and acquittal because the State failed to comply with his statutory speedy trial demand. For the reasons that follow, we affirm both cases.

Viewed in favor of the verdict,[2] the record shows that on August 31, 2012, Franshaun Colvin called Williams and asked to purchase drugs from him. As arranged, Colvin took the bus to a gas station in Gwinnett County, where Williams picked him up and drove him to an apartment complex. When they arrived at the complex, Williams left Colvin in the car and went upstairs, stating that he was going to meet a friend. Williams returned to the car five minutes later, pointed a small silver or chrome handgun at Colvin, and demanded his money. Colvin complied, and Williams drove away.

Colvin tried to find Williams's apartment, but called the police when he was unable to locate it. When he first relayed to police the events of the robbery, Colvin

---

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

omitted that he intended to purchase drugs from Williams, but he then conceded that he was meeting Williams to do so. Police obtained a search warrant for Williams' residence, where they found a small, silver handgun concealed behind the couch.

On December 5, 2012, in a single indictment, the State charged Williams with two counts of armed robbery: Count 1 alleged that on July 31, 2012, Williams and a co-defendant committed armed robbery of Matthew Barrett; Count 2 alleged the August 31, 2012 armed robbery of Colvin. On January 7, 2013, Williams's appointed counsel, Thomas Wight, filed a statutory demand for speedy trial.

On March 22, 2013, Wight moved to withdraw as counsel for Williams, stating that he was taking an extended absence from the practice of law beginning April 1, 2013, and that attorney Dawn Belisle had agreed to defend Williams. Belisle later testified that she agreed to represent Williams on the express condition that Williams withdraw his speedy trial demand, and Wight agreed, telling her that Williams was going to do so. Belisle told Williams that she was going to request a continuance, and he agreed.

On April 16, 2013, Belisle appeared at a calendar call on Williams's behalf, where the following colloquy ensued:

[PROSECUTOR]: Your Honor, the next case is Stacey Donnell[]

Williams, 12-B-5923-7. Your Honor, it is my understanding that the Speedy Trial Demand has been withdrawn on that case.

[BELISLE]: Correct, Judge. And as the [c]ourt knows, after

inheriting this case, I would ask for a continuance on this case.

[TRIAL COURT]: Yes, I just did an order appointing you when Mr. [Wight] withdrew[,] so I'll continue that one and give you a chance to catch up. . . .

Thereafter, on April 22, 2013, the trial court entered an order granting Wight's motion to withdraw and appointing Belisle to defend Williams.

In December 2013, Williams was tried by a jury on Count 1 only, but the trial court entered a mistrial after the jury was unable to reach a verdict. In May 2014, Williams was tried by a jury on Count 2, and they found him guilty of armed robbery. On June 10, 2014, Williams filed his initial motion for new trial.

On June 25, 2014, Williams was re-indicted for the July 31, 2012 armed robbery of Matthew Barrett (Count 1 on the original indictment). On March 19, 2015,

the trial court sentenced Williams to serve 15 years in prison as to Count 2.[3] On March 17, 2015, Williams entered an *Alford*[4] plea to robbery as a lesser included offense of the newly indicted armed robbery charge, and he was sentenced to serve five years concurrent with his sentence in the first indictment.

On May 28, 2015, Williams, through newly appointed counsel, moved to withdraw his plea. On September 28, 2015, following a hearing, the trial court denied Williams's motion for new trial, and on October 9, 2015, it entered an order denying his motion to withdraw his guilty plea. These appeals followed.

*Case No. A16A0497*

In several enumerations of error, Williams contends that the trial court erred by denying his motion for new trial as to his armed robbery conviction in Count 2.

1. Williams argues that he was entitled to a discharge and acquittal on Count 2 because the State failed to comply with his statutory speedy trial demand, which he contends was never actually withdrawn. We disagree.

---

[3] On March 31, 2015, the trial court entered an amended sentence reflecting the State's nolle prosequi on Count 1, for which Williams had been re-indicted.

[4] *North Carolina v. Alford*, 400 U. S. 25 (91 SCt 160, 27 LE2d 162) (1970).

5

As aforementioned, after meeting with Williams and getting his approval for a continuance, Belisle appeared on his behalf at the April 16, 2013 calendar call and orally informed the trial court that Williams had withdrawn his speedy trial demand. This representation resulted in a waiver of Williams's demand for speedy trial, notwithstanding the fact that Williams was not present at the calendar call.[5] In so holding, we reject Williams's argument that he "did not have valid legal counsel" at the April 16, 2015 calendar call. Wight had filed a motion to withdraw, specifically indicating therein that Belisle was willing to defend Williams, Williams had met with Belisle and agreed to a continuance, Belisle appeared on Williams's behalf at the calendar call, making representations on his behalf, including requesting a continuance, and the trial court specifically stated at the calendar call that he had

---

[5] See *Armstrong v. State*, 325 Ga. App. 33, 40 (7) (a) (752 SE2d 120) (2013) ("[A]lthough the record is unclear as to whether [the defendant] was present when his attorney made the announcement that she was withdrawing a demand for speedy trial, we know of no requirement that the client be present for the voluntary act by his counsel that results in such a waiver.") (punctuation omitted), quoting *Twiggs v. State*, 315 Ga. App. 191, 200 (3) (726 SE2d 680) (2012). See also *Burdett v. State*, 285 Ga. App. 571, 573 (2) (646 SE2d 748 (2007) (holding that defendant effectively withdrew his speedy trial demand when his attorney filed a motion to withdraw his demand, notwithstanding defendant's arguments that he did not know nor consent to the motion). We note that until he filed his motion for new trial, Williams took no steps to enforce the speedy trial demand, and he has offered no evidence that he ever objected to the withdrawal of the demand.

"[done]" an order appointing Belisle as counsel. Under these circumstances, we conclude that Belisle represented Williams at that proceeding despite the fact that the court did not enter the written order appointing her until April 22, 2015.

2. Williams argues that his constitutional right to be present at trial was violated when he was not in the courtroom at the April 16, 2013 calendar call. We find no basis for reversal.

> The federal and Georgia Constitutions demand that a criminal defendant has a right to be present at all critical stages of the proceedings against him. A critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way. Although denial of the federal constitutional right to be present is subject to harmless error review on direct appeal, the same is not true for claims of violation of the right to be present under the Georgia Constitution. Even so, this right exists where there is a reasonably substantial relation to the fullness of opportunity to defend against the charge and to the extent that a fair and just hearing would be thwarted by the defendant's absence.[6]

Further,

---

[6] (Citation and punctuation omitted.) *Thomas v. State*, 331 Ga. App. 641, 668 (11) (771 SE2d 255) (2015), citing *Tennessee v. Lane*, 541 U. S. 509, 523 (IV) (124 SCt 1978, 158 LE2d 820) (2004). See *Smith v. State*, 284 Ga. 599, 608 (4) (669 SE2d 98) (2008).

the constitutional right to be present is not violated when the defendant's absence occurs during conferences addressing legal matters to which the defendant cannot make a meaningful contribution. . . . [T]he right is waived if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver.[7]

Here, Belisle testified at the hearing on the motion for new trial that she met with Williams before she appeared on his behalf at the calendar call, and he agreed to a continuance. Because Williams has failed to prove that "his absence on April [13], standing alone, substantially affected the outcome of the case such that it could be considered a critical stage of the proceedings" or that he ever objected to his absence, we find no reversible error.[8]

3. Williams contends that trial counsel was ineffective by failing to move for a discharge and acquittal based on the State's failure to comply with his speedy trial demand and by failing to object to certain evidence going out with the jury.

To establish that his trial counsel was constitutionally ineffective, [Williams] was required to prove both deficient performance by counsel

---

[7] (Citation and punctuation omitted.) *Thomas*, 331 Ga. App. at 668-669 (11).

[8] See id. at 669-670 (11).

8

and resulting prejudice. To prove deficient performance, [Williams] had to demonstrate that counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. Because judicial scrutiny of counsel's performance must be highly deferential, the law recognizes a strong presumption that counsel performed reasonably, and the defendant bears the burden of overcoming this presumption. To carry this burden, [Williams] must show that no reasonable lawyer would have done what his counsel did, or failed to do what his counsel did not do. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. Even if a defendant can prove that his counsel's performance was deficient, he must also prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant must demonstrate a reasonable probability of a different result, which, the United States Supreme Court has explained, is a probability sufficient to undermine confidence in the outcome.[9]

(a) Williams's contention that trial counsel was ineffective by failing to move for discharge based on the State's failure to comply with his speedy trial demand is

---

[9] (Citations and punctuation omitted.) *Smith v. State*, 298 Ga. 406, 412 (3) (782 SE2d 269) (2016), quoting *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984).

without merit. As we held in Division 1, trial counsel effectively verbally withdrew the demand at the April 13, 2012 calendar call. Thus, any motion for discharge on this basis would have been denied. "[T]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel."[10]

(b) Williams also asserts that trial counsel was ineffective by failing to object when the trial court allowed a printout of text messages from Williams's phone to go out with the jury during deliberations in violation of the continuing witness rule.[11] The printout included an outgoing message from Williams's phone made five days after the robbery, stating "I'll just go back to robbing."

---

[10] *Hampton v. State*, 295 Ga. 665, 670 (2) (763 SE2d 467) (2014). Compare *Sloan v. Sanders*, 271 Ga. 299, 299-300 (519 SE2d 219) (1999) (trial counsel was ineffective by failing to move for dismissal pursuant to a statutory speedy trial demand because counsel was unaware of the demand filed by previous counsel, and there was no evidence that the defendant waived the right).

[11] Because Williams's trial was in 2014, Georgia's new Evidence Code applies. See Ga. L. 2011, pp. 99, 214, § 101. We note that Williams limits his argument regarding the violation of the continuing witness rule to ineffective assistance of counsel; he does not argue that the trial court committed plain legal error by allowing the text messages to go back with the jury. See *Goggins v. State*, 330 Ga. App. 350, 352 (1) (a) (767 SE2d 753) (2014) (applying plain error analysis to cases tried after January 1, 2013).

The continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.[12]

"The types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations. These documents, which generally contain their makers' assertions of purported truths, are ascribed evidentiary value only to the extent that their makers are credible."[13] "Georgia law permits letters admitted into evidence to go out with the jury."[14]

Pretermitting whether the text messages were written testimony subject to the continuing witness rule, given that the evidence contained in the text was also

---

[12] (Punctuation omitted.) *Wilkins v. State*, 291 Ga. 483, 487 (6) (731 SE2d 346) 2012), quoting *Tibbs v. Tibbs*, 257 Ga. 370 (359 SE2d 674) (1987).

[13] (Citation and punctuation omitted.) *Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009).

[14] (Punctuation omitted.) *Porter v. State*, 270 Ga. App. 860, 862 (2) (608 SE2d 315) (2004). See also *Varner v. State*, 297 Ga. App. 799, 805 (4) (678 SE2d 515) (2009) (holding that letters to and from the defendant and his accomplice "were not written testimony, but instead constituted original documentary evidence, circumstantial in nature, of [the defendant's] involvement in the crime at issue. As such, they were not subject to a continuing witness objection.")

11

brought out during the trial and the overwhelming evidence of Williams's guilt, including Colvin's testimony and the silver handgun found at Williams's house, Williams has failed to demonstrate that but for trial counsel's failure to object to the messages going out with the jury during deliberations there is a reasonable probability that the outcome of the trial would have been different.[15]

*Case No. A16A0498*

In this case, Williams asserts that trial counsel erred by denying his motion to withdraw his guilty plea. We find no basis for reversal.

4. Williams contends that the trial court erred by accepting his negotiated *Alford* guilty plea because the strength of the State's evidence did not substantially negate his innocence. We disagree.

---

[15] See *McKenzie v. State*, 300 Ga. App. 469, 473 (3) (685 SE2d 333) (2009) ("[E]ven if a violation [of the continuing witness rule] did occur in this case, . . . [g]iven the facts that the evidence contained in the summaries was also brought out during the trial and the evidence of guilt was overwhelming, it is highly probable that . . . the jury's view of [the] . . . exhibits did not contribute to the verdict.") (footnote omitted); *Fosselman v. State*, 306 Ga. App. 84, 86-87 (2) (a) (701 SE2d 559) (2010) (even if trial counsel was deficient for failing to assert a continuing witness objection, defendant must demonstrate prejudice to warrant reversal).

"*Alford* permits a criminal defendant to plead guilty while claiming to be innocent, where the defendant intelligently concludes that it is in his best interest to enter such a plea, but the plea is one of guilt and may be accepted only if the court determines there is a factual basis for a determination of guilt."[16]

Here, the trial court had already presided over the first trial in this case, which resulted in a hung jury. At the plea hearing, the prosecutor reminded the court of the evidence, including that the co-defendant, Jerome Welch, went to the victim's home, where Welch spent approximately 15-20 minutes texting on his cell phone. Welch then left, and when he returned, a second man pushed his way inside the home behind Welch, produced a gun, and took money and a debit card from the victim.[17] The subsequent police investigation revealed that Williams was one of the persons with whom Welch was texting while Welch was in the victim's home, and when police found Williams, he was in possession of a vehicle matching the description given by one of the victims, as well as a silver handgun matching the description of the gun

---

[16] (Punctuation omitted.) *Harpe v. State*, 254 Ga. App. 458, 459-460 (1) (562 SE2d 521) (2002), quoting *Thompson v. State*, 237 Ga. App. 466, 468 (2) (517 SE2d 339) (1999).

[17] At the initial trial in this case, the victim identified Welch, but was unable to identify Williams, and Welch did not testify for the State against Williams.

used by the second robber. Cell tower records confirmed that Williams's phone was at or near the area of the victim's apartment at the time of the robbery.

After this factual recitation at the plea hearing, Williams affirmatively stated on the record that he wished to enter a guilty plea to the reduced charge of robbery, responding affirmatively when the trial court asked:

> You're entering your plea as an *Alford* plea. Your attorney has explained that to you. I'm assuming what that means, an *Alford* plea meaning that you're not[] specifically admitting guilt; however, you understand what the evidence is, and rather than have another trial in your case and risk being convicted after trial and sentenced after trial, you believe it's in your best interest at this point in time to plead and receive the negotiated sentence?

Thus, the record "provided ample information from which the trial court could discern that the facts alleged by the State actually satisfied the elements of the charge to which [Williams] was pleading guilty. Consequently, the superior court did not err in accepting [Williams's] *Alford* pleas. . . ."[18]

5. Williams further contends that trial counsel was ineffective by recommending that he enter the negotiated plea.

---

[18] (Citation and punctuation omitted.) *Harpe*, 254 Ga. App. at 460-461 (3), quoting *Green v. State*, 265 Ga. 263, 265 (2) (454 SE2d 466) (1995).

Once a sentence has been entered, a guilty plea may be withdrawn only to correct a manifest injustice. Where, as here, the defendant bases his motion to withdraw on an ineffective assistance of counsel claim, he bears the burden of showing that his attorney's performance was deficient and that, but for counsel's errors, a reasonable probability exists that he would have insisted on a trial.[19]

Here, Williams did not testify at the hearings on his motion to withdraw his guilty plea or his motion for new trial. Thus, Williams failed to "produce any affirmative evidence . . . that but for his counsel's purportedly ineffective assistance, he would have insisted on going to trial. . . . Absent a showing of any prejudice, the trial court did not abuse its discretion [by] denying [Williams's] motion to withdraw his guilty plea."[20]

6. For the reasons stated in Division 2, there is no merit to Williams's argument that the trial court erred by denying his motion to withdraw his guilty plea because he was entitled to a discharge based on the State's failure to comply with his speedy

---

[19] (Punctuation omitted.) *Phillips v. State*, 329 Ga. App. 279, 281 (2) (764 SE2d 879) (2014), quoting *Williams v. State*, 307 Ga. App. 780 (706 SE2d 82) (2011).

[20] (Citation and punctuation omitted.) *Phillips*, 329 Ga. App. at 282 (2) (b).

trial demand. Further, by entering his guilty plea, Williams waived his right to a speedy trial.[21]

7. Finally, for the reasons stated in Division 3 (a), there is no merit to Williams's contention that trial counsel was ineffective by failing to move for a discharge and acquittal based on the State's failure to comply with his speedy trial demand.

*Judgment affirmed. Andrews, P. J. and Ray, J., concur.*

---

[21] See *Griffin v. State*, 278 Ga. 669 (604 SE2d 155) (2004) ("Having voluntarily entered a plea of guilty, appellant cannot raise as a defense his right to a speedy trial."), citing *Mason v. Banks*, 242 Ga. 292, 293 (2) (248 SE2d 664) (1978).